# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

EDWARD MC KAY,

    Petitioner,

v.                                                            Case No. 07-C-0799

ROBERT HUMPHREYS,

    Respondent.

## **DECISION AND ORDER**

On September 5, 2007, petitioner Edward McKay, currently incarcerated at the Racine Correctional Institution, filed a <u>pro se</u> petition for a writ of habeas corpus (Petition) pursuant to 28 U.S.C. § 2254. The petitioner was convicted of armed robbery with threat of force and was sentenced to seventeen years in prison, which included ten years of initial confinement and seven years of extended supervision.

The petitioner challenges the judgment of his conviction which was entered on October 26, 2004, on the following grounds: ineffective assistance of trial counsel for failing: (1) "to present necessary defense witnesses to adequately present a misidentification defense." (Petition at 6), (2) to request a jury instruction on eyewitness identification, and (3) to object to "other acts" evidence.

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. The case was assigned according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72.1 (E.D. Wis.). The parties have consented to United

States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73.1 (E.D. Wis.).

This court conducted a preliminary examination of the petition in accordance with Rule 4 of the Rules Governing § 2254 Cases. By order filed October 15, 2007, this court determined that "it does not plainly appear from the 'face of the petition' that the petitioner is not entitled to relief." Thus, this court ordered the respondent, Warden Robert Humphreys of the Racine Correctional Institution, to answer the petition for a writ of habeas corpus. The respondent answered the petition. Subsequently, the parties briefed the petition for a writ of habeas corpus, which is ready for disposition and will be addressed herein.

## **APPLICABLE LAW**

The habeas corpus statute was amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. No. 104-132, 100 Stat. 1214 (1996) which provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This provision entitles federal courts acting within their jurisdiction to interpret the law independently, but requires them to refrain from "fine tuning" state court interpretations. Lindh v. Murphy, 96 F.3d 856, 870-77 (7th Cir. 1996), rev'd on other grounds,

- 2 -

Case 2:07-cv-00799-PJG   Filed 08/18/08   Page 2 of 15   Document 33

521 U.S. 320 (1997). "Thus, although this court reviews the state court's legal conclusions and mixed questions of law and fact de novo, that review is 'tempered by AEDPA's deferential constraints.'" Hereford v. McCaughtry, 101 F.Supp.2d 742, 746 (E.D. Wis. 2000) (quoting Sanchez v. Gilmore, 189 F.3d 619, 623 [7th Cir. 1999]).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." Washington v. Smith, 219 F.3d 620, 628 (7th Cir. 2000) (quoting Williams v. Taylor, 120 S. Ct. 1495, 1519 [2000]). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> under the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

Washington, 219 F.3d at 628. The court went on to explain that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" Id. (quoting Williams, 120 S. Ct. at 1523).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." Hennon v. Cooper, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." Hall v. Washington, 106 F.3d 742, 749 (7th Cir. 1997). In Morgan v. Krenke, the court explained that:

> [u]nreasonableness is judged by an objective standard and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant

- 3 -

> state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565-66 (7th Cir. 2000) (quoting Williams, 120 S.Ct. at 1522). Therefore, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. Washington, 219 F.3d at 628.

## RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

The facts of this case were set forth by the Wisconsin Court of Appeals in its August 17, 2006, decision:

> The perpetrator confronted the victim of the robbery, Lisandra Velazquez, on a sidewalk, grabbed a necklace from her, and escaped in a red car. She described the perpetrator as a black male, approximately thirty years of age, 5' 6", 190 pounds, medium built, dark complexion, unshaven with a round face, sporting a three-inch afro, and wearing a red hooded sweatshirt and tan pants. Her description was similar to a description of [the petitioner] the police had on file.
>
> Velazquez was able to provide police with a partial license plate of the getaway car. A police officer spotted a car fitting the number and description, and stopped it. The driver was [the petitioner's] girlfriend, who testified that [the petitioner] borrowed the keys to the car for several hours earlier in the day, and had the keys at the time of the robbery. Police also found a red sweatshirt in the car, matching the one all three eyewitnesses described. Velazquez subsequently identified [the petitioner] from a police lineup, and identified him as the robber in the courtroom.

(Answer to Petition for Writ of Habeas Corpus [Answer], Exh. E at 2).

On October 7, 2004, after a jury trial at which Milwaukee County Circuit Court Judge Mary Kuhnmuench presided, the petitioner was convicted of armed robbery (reasonable belief of threat of force). On October, 25, 2004, Judge Kuhnmuench sentenced the petitioner to seventeen years in prison (ten years of initial confinement followed by seven years of extended supervision).

The petitioner, by new counsel, filed a motion for post-conviction relief pursuant to Wis. Stat. § 809.30, seeking a new trial on the basis of ineffective assistance of trial counsel. More specifically, the petitioner presented three bases for his ineffective assistance of counsel claim. First, the petitioner asserted that his attorney should have called two witnesses who were in the same general vicinity as the victim during the robbery in order to contradict the victim's testimony. Second, because of the two other witnesses who were available, the petitioner maintained that his trial counsel should have requested a jury instruction on eyewitness identification. Third, the petitioner asserted that his trial counsel failed to object to "other acts" evidence when Detective Jaeger testified that he was informed by Officer Strasser that Officer Strasser had some information on the petitioner from some prior dealings or a prior incident.

With respect to the issue of failing to present two witnesses, the trial court determined that the outcome of the case would not have been any different had the two witnesses testified. Specifically, the trial court concluded that even if trial counsel was deficient in not calling the two witnesses, "counsel's performance did not prejudice the defendant's case because the weight of the evidence that existed was so overwhelming that there is not a reasonable probability that the jury would have found other than it did." (Answer, Exh. B at 7). With respect to trial counsel's failure to request an instruction on misidentification, the court determined that there was not a reasonable probability the jury's verdict would have been different if given the instruction. As to the last issue, the trial court concluded that the comment by Detective Jaeger on the stand did not constitute "other acts" evidence. The trial court stated that it "would not have sustained an objection on the basis of other acts evidence had trial counsel objected." Id. at 8.

The petitioner appealed his conviction and the order denying his request for a new trial to the Wisconsin Court of Appeals. On appeal, the petitioner asserted that trial counsel was ineffective for failing: (1) to present two witnesses who would have given a different description of the armed robber than the victim had given; (2) to request a jury instruction on eyewitness identification; and (3) to object to "other acts" evidence which portrayed the petitioner in a negative light because it gave the jury information that the petitioner had prior dealings with the police.

The Wisconsin Court of Appeals affirmed the conviction and the trial court's order. The court concluded that the discrepancies among the three eyewitnesses with respect to the robber's height and the description of the robber's pants were insignificant and otherwise the descriptions were consistent. Thus, the court held that "a reasonable jury would not have considered the Williams brothers' descriptions exculpatory, nor found that they significantly undermined Velazquez's identification of [the petitioner]." (Answer, Exh. E at 4).

As to the petitioner's second ground, the court concluded that the evidence was strong against the petitioner and that his defense was weak. If anything, "the instruction [eyewitness identification] consists of common-sense notions about what jurors should take into account in assessing the reliability of eyewitnesses." Id.

With respect to the petitioner's third ground that trial counsel failed to object to "other acts" evidence, the court stated that the "record shows no prejudice from the testimony about McKay's unspecified prior contacts with a police officer." Id. at 5. The court noted that the reference "was brief, apparently inadvertent, and nonspecific." Id. Thus, the court held that given the overwhelming amount of evidence against the petitioner, objecting to the evidence "would not have created a reasonable probability of a different result." Id. at 5. The court

- 6 -

further stated: "In fact, it's possible that calling the jury's attention to a passing remark would have harmed [the petitioner]." Id.

The petitioner filed a petition for review with the Wisconsin Supreme Court raising the same issues raised before the court of appeals. On January 9, 2007, the Wisconsin Supreme Court denied the petition for review.

## **ANALYSIS**

The petitioner asserts that he was denied his right to effective assistance of trial counsel because his trial counsel failed to call two witnesses – Donnell and Melvin Williams – to testify and to ask the court to order a body attachment to obtain their presence. The petitioner further asserts that the Williams brothers' testimony would have contradicted the victim's testimony as to the description of the perpetrator. As a result, the petitioner maintains that the Williams brothers' testimony would have contributed to the petitioner's alibi defense.

Ineffective assistance of counsel claims are analyzed under Strickland v. Washington, 466 U.S. 668, 688 (1984), which is "clearly established Federal law, as determined by the Supreme Court of the United States." See Washington, 219 F.3d at 627-28. To prevail on a claim of ineffective assistance of counsel under Strickland, a petitioner "must show that counsel's performance was deficient . . . [and] . . . the deficient performance prejudiced the defense." 466 U.S. at 687. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id.

The first component requires a petitioner to show that his trial counsel "made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth

- 7 -

Amendment." Id. In other words, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." Id. To establish prejudice under the second component, a petitioner "must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. If the court determines that the petitioner has failed to satisfy either component of the Strickland test, it need not address the other. See Chichakly v. United States, 926 F.2d 624, 630-31 (7th Cir. 1991.)

A court's review of trial counsel's performance is "highly deferential." United States v. Meyer, 234 F.3d 319, 324 (7th Cir. 2000). "Because of the difficulties inherent in making [an evaluation of effective assistance of counsel], a court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged actions 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689. "Under Strickland, lawyers are granted wide latitude to make reasonable strategic decisions." Washington, 219 F.3d at 629-30.

In this case, the Wisconsin Court of Appeals decided the second or prejudice component of the Strickland analysis when it stated, "a reasonable jury would not have considered the Williams brothers' descriptions exculpatory nor found that they significantly undermined Velazquez's identification of McKay." (Answer, Exh. E at 4). The petitioner has not offered any reasonable evidence that but for not calling the two witnesses, the result of the proceeding would have been different. The victim had the clearest observation of the robber because she was within a foot of the perpetrator when she was robbed. The victim stated that the perpetrator

- 8 -

Case 2:07-cv-00799-PJG   Filed 08/18/08   Page 8 of 15   Document 33

was 5' 6", 30 years old, 190 pounds, black hair, and brown eyes. The petitioner is 5' 6", 33 years old, 180 pounds, black hair, and brown eyes. The victim identified the petitioner as the perpetrator from both a photo array and an in-person lineup. The Williams brothers described the perpetrator as 5' 11" and wearing jeans whereas the victim described the perpetrator as 5'6" and wearing khaki pants. Given that the Williams brothers were no closer than nine or ten feet away from the perpetrator, the victim, who was within a foot of the perpetrator, was in the better position to have a good look of the perpetrator. There were no other discrepancies between the victim and the Williams brothers.

Moreover, the victim gave the police a partial description of the perpetrator's car and license plate number which matched the petitioner's girlfriend's car. The petitioner had access to the car during the time of the robbery and the petitioner's girlfriend's car had damage on its front end, just as the victim had described. In addition, a red sweatshirt that the victim and the Williams brothers said the perpetrator was wearing at the time of the robbery was in the back of the petitioner's girlfriend's car.

The testimony of the Williams brothers would not have detracted from the information given by the victim. "[W]hen the allegation of the ineffectiveness of counsel centers on a supposed failure to investigate . . . the petitioner's obligation [of showing prejudice cannot] be met without a comprehensive showing as to what would have been produced." United States ex rel. Cross v. DeRobertis, 811 F.2d 1008, 1016 (7th Cir. 1987). "Complaints of uncalled witnesses are not favored in federal habeas review." DeRobertis, 811 F.2d at 1016 (quoting Murray v. Maggio, 736 F.2d 279, 282 [5th Cir. 1984]). "Therefore, if the potential witnesses are not called, it is incumbent on the petitioner to explain their absence and to demonstrate, with

- 9 -

some precision, the content of the testimony they would have given at trial." DeRobertis, 811 F.2d at 1016.

Although one of the Williams brothers could not pick the petitioner out of the lineup because he was not paying attention to the crime, the other brother picked out the petitioner from the lineup, but could not be certain that he was the perpetrator. Neither Williams brother could identify the perpetrator in a line up. Accordingly, this court cannot conclude that the Wisconsin state courts' determination that the petitioner was not prejudiced by trial counsel's failure to produce the Williams brothers is contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

Next, the petitioner asserts that his trial counsel rendered ineffective assistance when he failed to request a jury instruction on eyewitness identification. The petitioner asserts that there was doubt as to the victim's identification of him and, as a result, the jury should have been properly instructed on witness identification.

In cases where witness identification is an issue, "the trial judge must, at the defendant's request, instruct the jury about eyewitness identification testimony." United States v. Anderson, 739 F.2d 1254, 1258 (7th Cir. 1984) (citing United States v. Hodges, 515 F.2d 650, 653 [7th Cir. 1975]). However, "the giving of instructions on identification is largely within the discretion of the trial judge." Hodges, 515 F.2d at 652 (citing United States v. Sambrano, 505 F.2d 284, 286 [9th Cir. 1974]).

In any event, a defendant is entitled to an instruction on his or her theory of defense if: "the defendant proposes a correct statement of the law; the defendant's theory is supported by the evidence; the defendant's theory of defense is not part of the charge; and the failure to include an instruction on the defendant's theory of defense in the jury charge would deny the

- 10 -

defendant a fair trial." United States v. Douglas, 818 F.2d 1317, 1320 (7th Cir. 1987) (quoting United States v. Walker, 720 F.2d 1527, 1541 [11th Cir. 1983], cert. denied, 465 U.S. 1108 [1984]).  As a result, the petitioner must show that the failure to give the jury instruction on eyewitness identification "so infected the entire trial that the resulting conviction violates due process." Love v. Young, 781 F.2d 1307, 1318 (7th Cir. 1986) (quoting Henderson v. Kibbe, 431 U.S. 145, 154 [1977]).

The defendant asserts that his trial counsel should have asked the court to instruct the jury on eyewitness identification as set forth in WI-JI-Criminal 141 (2006), which provides:

> The identification of the defendant is an issue in this case and you should give it your careful attention.  You should consider the reliability of any identification made by a witness, whether made in or out of court.  You should consider the credibility of a witness making an identification of the defendant in the same way you consider credibility of any other witness.
> Identification evidence involves an expression of belief or impression by the witness.  Its value depends on the opportunity the witness had to observe the offender at the time of the offense and later to make a reliable identification.
> Consider the witness' opportunity for observation, how long the observation lasted, how close the witness was, the lighting, the mental state of the witness at the time, the physical ability of the witness to see and hear the events, and any other circumstances of the observation.
> You should also consider the period of time which elapsed between the witness' observation and the identification of the defendant and any intervening events which may have affected or influenced the identification.
> In evaluating the identification evidence, you are to consider those factors which might affect human perception and memory and all the influences and circumstances relating to the identification.  Then give the evidence the weight you believe it should receive.
> If you find that the crime alleged was committed, before you may find the defendant guilty, you must be satisfied beyond a reasonable doubt that the defendant is the person who committed the crime.

The court of appeals concluded the petitioner failed to show any prejudice because of his counsel's failure to request such instruction. The appeals court stated:

> McKay's motion failed to allege facts showing that use of the standard eyewitness instruction, Wis JI – CRIMINAL 141, would have created any probability of a different result. The evidence against him was overwhelming and his defense weak. The instruction consists of common-sense notions about what jurors should take into account in assessing the reliability of eyewitnesses. McKay made no showing that the jurors would have viewed Velazquez's identification and description as less reliable had they heard the instruction.

(Answer, Exh. E at 4).

Even though the eyewitness identification instruction was not given, the jury was instructed on the credibility of witnesses and the factors to consider in assessing credibility. The trial court judge gave the following jury instruction:

> It is the duty of the jury to scrutinize and to weigh the testimony of witnesses, and to determine the effect of the evidence as a whole. You are the sole judges of the credibility, that is the believability of the witnesses, and of the weight to be given to their testimony. In determining the credibility of each witness, and the weight that you give to the testimony of each witness, consider these factors. Whether the witness has an interest or lack of interest in the result of this trial. The witness's conduct, appearance and demeanor on the witness stand, the clearness or lack of clearness of the witness's recollections. The opportunity the witness had for observing and for knowing the matters the witness testified about. The reasonableness of the witness's testimony. The apparent intelligence of the witness, bias or prejudice, if any has been shown, possible motives for falsifying testimony, and all other facts and circumstances during the trial which tend either to support or to discredit the testimony, then give to the testimony of each witness the weight you believe it should receive.

(Answer, Exh. J at 24-25).

Thus, the jury was instructed to consider the opportunity the witness had to observe the matters the witnesses testified about, as well as the clearness of the witness' recollections and the reasonableness of the witness' testimony. The petitioner has not shown that he was prejudiced by the lack of an eyewitness instruction at his trial. Accordingly, the petitioner has

- 12 -

not demonstrated that the court of appeal's decision was contrary to, or an unreasonable application of clearly established federal law.

Finally, the petitioner asserts that his trial counsel failed to object to "other acts" evidence. The petitioner maintains that the issue of "other acts" arose because Detective Jaeger testified that he compiled the photo array after receiving information from Officer Strasser "on a possible suspect from some prior dealings or incident that he had." (Petitioner's Brief in Support of his Habeas Corpus [Petitioner's Brief] at 27). Detective Jaeger testified that the petitioner happened to be the possible suspect to whom Officer Strasser was referring. The petitioner asserts that the jury perceived him as a habitual criminal as a result of the detective's comment.

"A writ of habeas corpus will issue only when an error in admitting evidence 'is of such magnitude that the result is a denial of fundamental fairness.'" Love, 781 F.2d at 1312 (quoting United States ex rel. Palmer v. DeRobertis, 738 F.2d 168, 170 [7th Cir. 1984]). This court reviews whether the evidence erroneously admitted at trial is "material in the sense of a crucial, critical, highly significant factor [in the outcome of the case]." Williams v. Owens, 731 F.2d 391, 392 (7th Cir. 1983) (citing Lawerence v. Wainwright, 445 F.2d 281, 282 [5th Cir. 1971]). "The petitioner bears the burden of persuasion that the admission of this evidence rendered the trial fundamentally unfair." Love, 781 F.2d at 170 (citing United States ex rel. Shaw v. DeRobertis, 755 F.2d 1279, 1281 n.1 [7th Cir. 1985]).

Detective Jaeger's comment occurred when he explained how he received the information necessary to compile a photo array. The testimony was "brief, apparently inadvertent and nonspecific." (Answer, Exh. E at 5). The court of appeals, addressing the claim under Strickland, stated: "The record conclusively shows no prejudice from the testimony

- 13 -

about McKay's unspecified prior contacts with a police officer. Id. Moreover, as the court observed "it's possible that calling the jury's attention to a passing remark would have harmed the [petitioner]." Id., see also, United States v. Brown, 739 F.2d 1136,1146 (7th Cir. 1984) (In certain circumstances, objecting to prior incidents may "highlight[] the 'other acts' referred to and cause[] more harm than quietly letting the testimony slip by.").

The petitioner has not shown that he was prejudiced by Detective Jaeger's statements or that admission of the brief testimony about his unspecified prior contacts with law enforcement rendered his trial fundamentally unfair. He has not demonstrated that the court of appeals' decision was contrary to, or an unreasonable application of clearly established federal law.

The petitioner also asserts that he should be afforded an evidentiary hearing on his claims. Section 2254(e)(2) of Title 28 United States Code sets forth the standard that must be met to warrant such a hearing in federal court. The petitioner has not established that he is entitled to such evidentiary hearing.

In sum, the decision of the Wisconsin courts was neither contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Therefore, for the reasons stated herein, the petitioner's petition for a writ of habeas corpus will be denied.

## **ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus be and hereby is **denied**.

**IT IS FURTHER ORDERED** that this action be and hereby is **dismissed**.

**IT IS ALSO ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 18th day of August, 2008.

BY THE COURT:

s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge
